UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>EVENS EMMANUEL BONHEUR,<br><br>Defendant. | Case No. 2:25-cr-226-KCD-NPM |

**DECLARATION OF DIA BRANNEN, Ph.D.**

1. I am employed by the United States Department of Justice (USDOJ) and the Federal Bureau of Prisons (BOP) in the Psychology Services Branch as the Chief of the Psychological Evaluations section. I am a licensed psychologist and have been employed with the BOP since 2007 and have overseen forensic evaluations since 2018.

2. In my capacity, I oversee and manage the movement of court-ordered or referred defendants for pre-trial mental health study orders and evaluations to and from appropriate BOP institutions. In addition to pre-trial study orders, I also manage and oversee movements for longer term commitments which requires the individual be committed to the care and custody of the Attorney General, and in a "suitable facility" pursuant to 18 U.S.C. §§ 4241(d)-4248. While Chapter 313 does not define "suitable facility," the Code of Federal Regulations does: "As used in 18 U.S.C. Chapter 313 and this subpart, 'hospitalization in a suitable facility' includes the Bureau's designation of inmates to medical referral centers or correctional institutions that provide the required care or treatment." 28 C.F.R. § 549.41. This inmate movement within the context of mental health study orders, evaluations, and subsequent commitments is colloquially referred to as the "pipeline" for all court-ordered evaluations, testing and other assessments pursuant to 18 U.S.C. §§ 4241-4246.

3. In the course of my duties, I regularly have access to, and use documents created by the United States Marshals (USMS) service such as Movement Requests, USMS Form 129, and BOP databases such as SENTRY. Additionally, I have access to PACER. After reviewing records from the above-named sources, I am generally able to view and reconstruct an inmate's movement within the USMS and BOP.

**Entry into the pipeline**

4. Entry into the pipeline for pre-trial evaluations and commitments are initiated by a court order for the appropriate evaluation or term of commitment. The Order is sent to the USMS where it must be uploaded in Capture, a computer database service that bridges the USMS and BOP logistics. The BOP is wholly dependent on the Capture system. If

an Order is not properly entered into Capture by the USMS, BOP is unaware of the Order. Upon entering the order into Capture, BOP medical designators stationed at the Designation and Sentence Computation Center designate the individual to an appropriate facility based on the type of evaluation ordered, as well as any medical and security concerns. Designation does not mean a bed is immediately available for the subject. Once the individual is designated by BOP, the USMS receives a notification through Capture that a movement request should be entered for that individual. The USMS is responsible for the transport pursuant to the movement request for the subject to arrive at the designated BOP facility.

**Backlogs in inpatient and mainline BOP facilities**

5. There is generally little wait time for an individual to arrive at a mainline BOP facility for evaluations pursuant to 18 U.S.C. §§ 4241(b), and 4242, as these evaluations generally last thirty to forty-five days. There are currently eleven BOP facilities that operate as mainline forensic sites and routinely conduct forensic evaluations under 18 U.S.C. §§ 4241(b), and 4242. Traditionally, there have been four primary BOP facilities that conduct forensic evaluations under 18 U.S.C. §§ 4241(b), 4241(d), 4242, 4243, 4246, and 4248: FMC Butner, USMCFP Springfield, FMC Devens, and FMC Carswell (females only). Those same sites are the only BOP facilities that conduct competency restoration as FMC Devens began offering competency restoration in January 2021.

6. Currently, the waiting time to enter a medical center for a § 4241(d) evaluation and restoration treatment is approximately six to seven months depending on current demand with other swells and lulls within the pipeline. There are several factors that contribute to this wait time including but not limited to, the limited number of restoration sites, staffing levels, bed space, and increased need for restoration services over the years. The capacity in all BOP restoration units is limited by the number of providers on staff, to include psychologists, psychiatrists, physicians, nurses, and correctional staff, who are necessary to care for and monitor the inmate population. The need to have adequate personnel to protect both staff and inmates significantly influences the capacity of the facility and the turnover of available bed space. In response to increased demand for competency restoration, a new treatment unit was created specifically for the provision of competency restoration treatment at MCC Chicago; meaning there currently four (male) facilities which provide the care or treatment required in 18 U.S.C. § 4241(d) – FMC Butner, FMC Devens, USMCFP Springfield, and MCC Chicago.

**USMCFP Springfield**

7. The Mental Health Pipeline at USMCFP Springfield can typically admit four new mental health study orders every month. USMCFP Springfield has rolling admission for restoration beds. The USMCFP is a Care Level IV facility, meaning it can house patients with the highest level of mental health and/or medical needs. Furthermore, it is an inpatient restoration site with secured, semi-open, and open housing for mental health patients.

**FMC Butner**

8. FMC Butner also utilizes rolling admission and can typically admit twelve new mental health study orders every month. Like USMCFP Springfield, FMC Butner offers inpatient restoration, is a Care Level IV facility, and is composed of secured, semi-open, and open housing for mental health patients.

**FMC Devens**

9. FMC Devens also utilizes rolling admission and can typically admit four new mental health study orders every month. Like USMCFP Springfield, FMC Devens offers inpatient restoration, is a Care Level IV facility, and is composed of secured, semi-open, and open housing for mental health patients.

**MCC Chicago**

10. In 2022, BOP physically expanded and renovated a unit at BOP's pre-trial detention center, MCC Chicago for a new "jail-based" restoration program with a rated capacity of 42 beds. MCC Chicago is a Care Level II facility, meaning a patient's mental health and medical needs cannot surpass a certain threshold requiring a higher care level. This jail-based restoration is not performed on an inpatient basis, but rather in an open population setting composed of mental health patients undergoing competency restoration treatment. The program at MCC Chicago was activated in January 2023. Defendants can expect to receive multidisciplinary treatment services from psychology and medical staff in pursuit of competency restoration. Because MCC Chicago does not offer inpatient restoration, some individuals with certain security concerns such as separatees, broad publicity, and gang concerns cannot be safely housed at MCC Chicago and require placement at a facility with inpatient restoration. In addition, because MCC Chicago is not an inpatient psychiatric hospital but, instead, uses a jail-based treatment unit model, only defendants requiring less intensive psychiatric services are appropriate for admission to the program. Individuals with a history of disruptive or aggressive behavior or who have characteristics that appear less amenable to restoration efforts are not appropriate for admission for the program at MCC Chicago.

**Pipeline disruptions**

11. Typically, the pipeline is first-come, first-served, and individuals are placed in order based on the date of the § 4241(d) order. However, there are events that can disrupt the order of the pipeline. For example, a court-ordered self-surrender or a psychiatric emergency that cannot be managed at another facility, can "bump" everyone on the pipeline back because of the pressing nature of an emergency or self-surrender. Additionally, whenever a demand or request is made to "bump" an individual to the front of the line at the upper-management level of BOP and that request is accommodated, it will also delay everyone else who is currently awaiting admission to a forensic restoration site within the BOP. Further, the Ninth Circuit's ruling in *United States v. Donnelly*, No. 22-30081 (9th Cir. 2022), has severely impacted the BOP's ability to place individuals at the restoration site based on the date of the § 4241(d) order. This is because restoration beds must now be "held" for individuals designated from the district courts

within the Ninth Circuit.

12. The USMS provides ongoing medical and psychiatric care for pretrial defendants housed outside of the BOP. The only reason BOP would alter a defendant's place on the waiting list would be if contacted by the USMS due to the defendant experiencing severe medical or psychological decompensation, thereby increasing the urgency for treatment due to a medical reason. At that point, documentation would be reviewed, and I would personally discuss the case with USMS and BOP personnel, in order to determine the most appropriate decision for that defendant.

13. The Bureau of Prisons is acutely aware of the backlog problems. There have been measures taken to decrease the pipeline backlog within the Bureau of Prisons including the recent expansion and recruiting for additional forensic staff at the restoration sites with incentives such as specialty rate pay, and recruitment and retention bonuses to attract and retain staff members. In addition, the BOP recently added postdoctoral fellowships in forensic psychology at five BOP forensic evaluation sites to build a recruitment stream for these difficult-to-fill positions. Further, BOP has hired additional forensic psychologists at the Central Office level who can be dispatched to institutions to assist with evaluations.

14. The BOP has explored the possibility of contracting with other facilities to conduct competency restoration evaluation. However, due to their own increase in the need for mental health assessments and care, state facilities are equally as inundated as the BOP. Thus, at this time, it appears that contracting with the state for use of their facilities and staff is not a viable option.

**4241(d) expansion limitations**

15. Prior to the competency restoration mission expansion, a "suitable facility" for the purpose of § 4241(d) evaluation was defined by the facility's specific mental health mission, appropriate staffing, and treatment capabilities. It is not only staffing for the competency determination that is important in determining a suitable facility, but also ensuring that the facility has appropriate staffing if and when the individual becomes committed under 18 U.S.C. § 4246. In short, a "suitable facility" for restoration and commitment purposes traditionally required not only a forensic psychologist, but also psychiatry, social work, and treatment staff available to assist in medicating and treating the person in the event he is committed to the custody of the Attorney General. Each facility offers a course of treatment specific to a given defendant, which may include numerous therapeutic offerings such as medication, substance abuse programming, group therapy, and individual treatment. The jail-based competency restoration program at MCC Chicago was not designed to require these resources. Instead, in the event of a psychiatric emergency at MCC Chicago, a defendant would be emergently transported to USMCFP Springfield for psychiatric care in an inpatient setting with the aforementioned resources.

**4241(d) evaluation process**

16. A § 4241(d) evaluation is significantly more laborious than an evaluation under § 4241(b). Psychology and medical staff often utilize the entire four-month period before rendering a final opinion as to the individual's likelihood to be restored to competence. A restoration period requires a multi-disciplinary approach. It includes an individualized treatment plan with some commonalities depending on whether the individual is presenting with psychiatric concerns or cognitive concerns, or a combination thereof. It includes assessing for competency-related impairments, as well as the initiation, continuation, and/or modification of appropriate medication via continuous monitoring and evaluation by the primary evaluator to facilitate the evaluee's ability to regain competence. Any psychiatric medication needs are coordinated with the facility's medical or psychiatry staff. Restoration can include any indicated psychological or educational testing to ascertain or rule out certain diagnoses. There is also a psycho-educational component in both group and individual settings to ensure that the individual is exposed to the factual information needed in order to proceed in the court system. This is of particular importance for individuals who present with cognitive impairment concerns. The providers also conduct frequent mental status contacts and in- depth clinical interviews in order clarify any diagnoses. The provider also works closely with the prescribing physician or psychiatrist to make medication adjustments. The primary evaluator also speaks with other institution staff such as medical, nursing, and corrections personnel to ascertain the individual's daily functioning in the facility. Additionally, an in-depth records review is conducted as part of the evaluation process including but not limited to: court orders, previous evaluation(s), charging documents, educational records, employment history, relationship history, criminal background, and any other available, relevant documentation. At the conclusion of the four-month period prescribed in the statute, the evaluator authors a report detailing the clinical formulation, diagnostic impression, and providing an opinion regarding competency to proceed.

17. The constant clinical observations needed to prepare a thorough, comprehensive report requires the individual to be physically present in the facility for reporting purposes. This necessarily means that in no case can restoration be attempted while an individual is in another facility or in the community. Additionally, literature suggests that approximately 70 percent of individuals can be restored. Shortening the time of § 4241(d) treatment denies the defendant the opportunity to be restored and for the prosecution to resume.

**Defendant Evens Emmanuel Bonheur, Reg. No. 26321-512**

18. The Honorable Nicholas P. Mizell, United States Magistrate Judge for the Middle District of Florida issued an Order finding Mr. Bonheur incompetent to stand trial and committing him for treatment in a suitable facility pursuant to 18 U.S.C. § 4241(d). The order was issued on May 20, 2026.

19. Mr. Bonheur was subsequently designated to FMC Butner for his mental health study pursuant to 4241(d) and will be transported there once a bed becomes available. He is expected to admit to FMC Butner no later than mid-November 2026, approximately six months from the date the 4241(d) order was issued. Once he admits to FMC Butner, the 4241(d) study will begin.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2026.

Dia Brannen, PhD, ABPP

Dia Brannen, Ph.D., ABPP
Chief, Psychological Evaluations Section
Psychology Services Branch
Federal Bureau of Prisons